UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| 2000 CLEMENTS BRIDGE, LLC,<br><br>    Plaintiff-Counterclaim<br>    Defendant,<br><br>    v.<br><br>OFFICEMAX NORTH AMERICA, INC.,<br><br>    Defendant-<br>    Counterclaimant. | HONORABLE JOSEPH E. IRENAS<br><br>CIVIL ACTION NO. 11-57<br>        (JEI/KMW)<br><br>**OPINION** |

**APPEARANCES:**

Patras Williams, LLC
Amy M. Williams
14 Countryside Lane, Suite #100
Ringwood, New Jersey 07456
    Counsel for Plaintiff

Reilly, Janiczek & McDevitt, P.C.
Susan Valinis
2500 McClellan Blvd., Suite 240
Merchantville, New Jersey 08109
    Counsel for Defendant

**IRENAS**, Senior District Judge:

    Plaintiff 2000 Clements Bridge, LLC alleges that Defendant OfficeMax North America, Inc. breached the terms of a lease for commercial property. Presently before the Court are Cross Motions for Summary Judgment. (Dkt. Nos. 52, 75)

**I.**

    In February 2006, AIG Baker Deptford, LLC ("Former

1

Landlord") acquired ownership of Deptford Landing Shopping Center (the "Shopping Center"). (*See* Williams Cert. Ex. A at 2) On September 13, 2007, Former Landlord leased a lot to Defendant at the Shopping Center ("Defendant's Lease"). (*See* Valinis Cert. Ex. A at 1)

Defendant's Lease contained a restrictive covenant (the "Prohibited Uses Provision"), inserted for the benefit of Defendant, which ran with the land. (*See* Valinis Cert. Ex. A at 23) The Prohibited Uses Provision prohibited Former Landlord and his successors from leasing a lot to a tenant in the Shopping Center likely to be a direct competitor of Defendant.

> During the initial term of this lease or during any renewal period hereunder, and for so long as Tenant is operating an office supply superstore from the Demised Premises, Landlord covenants and agrees that it shall not enter into a lease or sale of any portion of the Shopping Center (excluding the Demised Premises) for the following:
>
> (a) For the purpose of, or which is permitted to be, the sale of office, home office, school or business products, computers and computer products, office, home office, school or business supplies or equipment; office furniture; or electronics (including by way of example those businesses operated by Office Depot, Staples, Office Shop Warehouse, Mardel Christian Office and Education Supply Store, Mail Boxes etc., and Workplace); or for use as a business support center, copy center or "Kinko" type of operation (all of which are hereinafter referred to as the "Prohibited Uses"), except to the extent permitted by subparagraph (b) immediately below . . . or
>
> (b) For any purpose which would permit more than (i) one thousand (1,000) square feet of space

to be used for any Prohibited Uses . . .

(Valinis Cert. Ex. A at 23)

Defendant's Lease also included a cotenancy provision ("Cotenancy Provision"). If Michaels Stores, Inc., PetSmart, Inc. or Circuit City Stores, Inc. ("Major Tenants")[1] ceased operations at the Shopping Center (a "Cotenancy Event") for 180 days, Defendant's minimum rent would abate.[2] (*See* Valinis Cert. Ex. A at 30) If, after eighteen months, Former Landlord had not found a new tenant to replace the vacating Major Tenant ("Replacement Tenant"), Defendant gained the right to terminate. (*Id.*) Former Landlord could cure the Cotenancy Event within eighteen months merely by finding a Replacement Tenant. (*Id.*) To cure after eighteen months, however, Former Landlord would have to find a Replacement Tenant and provide Defendant with notice of the cure or Defendant's right to terminate would not lapse. (*Id.*)

The parties agree that, on March 7, 2009, a Cotenancy Event occurred when Major Tenant Circuit City ceased operations at the Shopping Center. (*See* Pl.'s Facts ¶ 26)[3] On July 29, 2009, Former

---

[1] These Major Tenants entered leases before Defendant and thus were not subject to the Prohibited Uses Provision.

[2] If a Cotenancy Event occurred, Defendant had to pay only 3% of gross sales ("Percentage Rent") for the months that the Cotenancy Event remained uncured. (Valinis Cert. Ex. A at 30)

[3] Citations to "Facts" refer to the parties' obligation to submit statements of undisputed facts with motions for summary judgment. *See* L.Civ.R. 56.1(a).

Landlord leased the lot to Replacement Tenant Gregg Appliances, Inc. ("hhgregg Lease"), an electronics retail store similar to Circuit City. (*Id.* at ¶ 27) On May 20, 2010, hhgregg opened for business approximately fourteen months after the Cotenancy Event.

The hhgregg Lease described the proper uses for the property ("Use Provision"):

> <u>Use</u>. Except with respect to the Exclusive Uses and Restrictions, which are listed in Exhibit "D" attached hereto, and to the extent not prohibited by the Permitted Encumbrances listed in Exhibit "F" attached hereto, Tenant may use the Premises for any lawful retail purpose including, but not limited to the display and retail sale of electronics, appliances, audio and video equipment, computers and bedding as typically sold in stores operated by Tenant, and for the storage of merchandise or service related purposes ancillary to the sale of its goods.

(Valinis Cert. Ex. B at 4-5)

Attached verbatim to the hhgregg Lease as Exhibit D was the Prohibited Uses Provision from Defendant's Lease. (Valinis Cert. Ex. B at Ex. D) The principal issue in this case is the interpretation of these competing provisions: the Prohibited Uses Provision purportedly prohibited the sale of computers and electronics while the Use Provision expressly permitted such retail activity.

On July 16, 2010, Plaintiff became the owner of the Shopping Center and succeeded Former Landlord's interests under all of the Shopping Center leases. (*See* Williams Cert. Ex. A at 1) On July 27, 2010, Defendant sent notice to Plaintiff that not only did

4

the Cotenancy Event remain uncured, but that the hhgregg Lease also violated Defendant's Prohibited Uses Provision.[4] (*See* Pl.'s Facts ¶ 39)

Plaintiff disputed Defendant's reading of the Prohibited Uses Provision and sent Defendant notice that, under its interpretation, hhgregg was not in violation. (*See* Valinis Cert. Ex. C, Letter from Williams, Aug. 10, 2010) While still disputing that a violation had occurred, Plaintiff sent hhgregg a notice of default and demanded a cure. (*Id.*) [H]hgregg, however, did not cure the violation and Plaintiff notified hhgregg that the behavior had "ripened into an Event of Default." (Valinis Cert. Ex. C, Letter from Williams, Sept. 16, 2010) Despite the warning, Plaintiff pursued no further rights or remedies against hhgregg. (*See* Def.'s Facts ¶ 25)

Following this correspondence, Defendant continued to pay Percentage Rent until October 7, 2010. (*See* Def.'s Br. 11) At Plaintiff's insistence, Defendant then paid full rent for the remainder of October and November under protest. (*See* Pl.'s Facts ¶ 50, 52) After November, it is unclear what amount of rent, if

---

[4] Ironically, OfficeMax negotiated for Circuit City to remain in the Shopping Center via the Cotenancy Provision. OfficeMax evidently found Circuit City to benefit its business. When Landlord replaced Circuit City with hhgregg, a substantially similar store, OfficeMax claimed a violation of the Prohibited Uses Provision. OfficeMax's seemingly anomalous position, however, is not dispositive to these Motions.

any, Defendant paid.[5]

On November 23, 2010, Plaintiff filed the Complaint in New Jersey State Court. (*See* Pl.'s Br. 12) On December 7, 2010, Defendant sent Plaintiff written notice that it was terminating the lease. (*See* Pl.'s Facts ¶ 54) On January 6, 2011, Defendant removed this action on the basis of diversity jurisdiction. (Dkt. No. 1) On January 20, 2011, Defendant filed the Answer and counterclaimed. (Dkt. No. 4) On January 22, 2011, Defendant ceased operations. On February 28, 2011, Plaintiff retook possession of Defendant's property. (*See* Def.'s Facts ¶ 12)

## II.

"[S]ummary judgment is proper 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (quoting Fed.R.Civ.P. 56(c)). In deciding a motion for summary judgment, the Court must

---

[5] The parties do not address post-November 2010 rent payments in their Local Rule 56.1 Statements of Uncontested Facts whatsoever. However, in the Complaint, Plaintiff alleged that Defendant did not pay any rent following the protested payment for November. (Compl. ¶ 80) Defendant denied this allegation and maintained that all rent had been paid in full. (Def.'s Answer ¶ 80) Neither of these facts may be considered, though, because they were not included in the parties' 56.1 statements.

6

construe the facts and inferences in a light most favorable to the non-moving party. *Pollock v. Am. Tel. & Tel. Long Lines*, 794 F.2d 860, 864 (3d Cir. 1986).

"'With respect to an issue on which the non-moving party bears the burden of proof, the burden on the moving party may be discharged by 'showing' – that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case.'" *Conoshenti v. Public Serv. Elec. & Gas*, 364 F.3d 135, 145-46 (3d Cir. 2004) (quoting *Celotex*, 477 U.S. at 323). The role of the Court is not "to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id*. at 249.

### III.

The claims of both Plaintiff and Defendant revolve around the propriety of Defendant's termination of the Lease under either (1) the Prohibited Uses Provision or (2) the Cotenancy Provision.[6] Both parties move for summary judgment on all claims.

---

[6] Plaintiff's Complaint technically alleges four claims: (1) anticipatory breach of contract; (2) unjust enrichment; (3) breach of the covenant of good faith and fair dealing; and (4) tortious interference with contractual relations. Plaintiff additionally seeks a declaratory judgment finding Defendant

7

**A.**

First, Defendant could rightfully terminate if Plaintiff leased a portion of the Shopping Center that violated the Prohibited Uses Provision, and such violation continued for sixty days after Defendant gave Plaintiff written notice. (*See* Valinis Cert. Ex. A at 23-25)

Normally, under New Jersey law, the construction of a written contract is a matter of law. *See Fastenberg v. Prudential Ins. Co. of Am.*, 309 N.J. Super. 415, 420 (App. Div. 1998); *see also Verhagen v. Platt*, 1 N.J. 85, 88 (1948) (stating that the common intent of the parties controls). When construing a contract "it should not be interpreted to render one of its terms meaningless. 'Literalism must give way to context.'" *Cumberland Cnty. Improvement Authority v. GSP Recycling Co., Inc.*, 358 N.J. Super. 484, 497 (App. Div. 2003) (quoting *Borough of Princeton v. Bd. of Chosen Freeholders of Cnty. of Mercer*, 333 N.J. Super. 310, 325 (App. Div. 2000), *aff'd*, 169 N.J. 135 (2001). "[W]here there is uncertainty, ambiguity or the need for parol evidence to aid in the interpretation, then the doubtful provision should be

---

wrongfully terminated its lease.
    Defendant's Answer technically alleges three counterclaims: (1) breach of contract; (2) unjust enrichment; and (3) breach of the covenant of good faith and fair dealing. Defendant also seeks a declaratory judgment finding that Defendant properly terminated its lease.

left to the jury." *Great Atl. & Pac. Tea Co. v. Checchio*, 335 N.J. Super. 495, 502 (App. Div. 2000) (citing *Michaels v. Brookchester, Inc.*, 26 N.J. 379, 387 (1958)).

To determine whether a violation occurred, the Court must determine what was actually prohibited. The Prohibited Uses Provision contains two lists. One list prohibits certain products: "office, home office, school or business products, computers and computer products, office, home office, school or business supplies or equipment; office furniture; or electronics." (Valinis Cert. Ex. A at 23) The second list identifies examples of prohibited entities: "Office Depot, Staples, Office Shop Warehouse, Mardel Christian Office and Education Supply Store, Mail Boxes etc., and Workplace." (*Id.*)

The Prohibited Uses Provision, therefore, must be interpreted to prohibit the sale of the listed products, but only when sold through a prohibited office superstore. *See Borough of Princeton*, 333 N.J. Super. at 325 (noting that a document "must be read as a whole, without artificial emphasis on one section with a consequent disregard for others."). This interpretation harmonizes both the hhgregg Lease and Defendant's Lease. It also comports with commonsense.

To place undue emphasis on the list of prohibited products, as Defendant suggests, would cause several problems. First, the list of office superstores would be rendered meaningless. Second,

hhgregg's Use Provision would directly contradict Defendant's Prohibited Uses Provision attached as Exhibit D to the hhgregg Lease. The Court cannot fathom that an electronics retail store would intend to enter a contract that prohibited the sale of electronics. Accordingly, the Court finds that the Prohibited Uses Provision is unambiguous, parol evidence is not required, and Plaintiff did not violate its terms. Defendant, therefore, was not entitled to terminate the Lease under the Prohibited Uses Provision.

**B.**

Second, under the Cotenancy Provision, Defendant's only argument is that hhgregg cannot be a Replacement Tenant because hhgregg was violating the Prohibited Uses Provision. As noted above, hhgregg was not violating the Prohibited Uses Provision. Even if it were, however, nothing in the Cotenancy Provision requires the Replacement Tenant to abide by the Prohibited Uses Provision. The two provisions create two separate obligations with different remedies. Defendant's attempt to conflate the two provisions, therefore, is without merit.

Moreover, it is undisputed that hhgregg opened for business well within eighteen months. Although Plaintiff erroneously conceded that the Cotenancy Event was not properly cured because Plaintiff did not send Defendant notice of a cure (see Pl.'s Br. at 27-28 & n.4), no reasonable interpretation of the Cotenancy

Provision required Plaintiff to give such notice. Before the expiration of eighteen months, a Cotenancy Event continued "until such time as Landlord has caused the Vacant Space to be open and operated by a single-user, retail tenant, if the Vacant Space was previously occupied by any Major Tenant." (Valinis Cert. Ex. A at 30) It is undisputed that hhgregg is a single-user, retail tenant.

The Court declines to send this case to a jury based solely on Plaintiff's erroneous concession where no reasonable jury could find in Defendant's favor. Accordingly, Defendant did not have the right to terminate under the Cotenancy Provision.

### C.

For the reasons above, Defendant was not entitled to terminate the contract under either the Prohibited Uses Provision or the Cotenancy Provision. Accordingly, Plaintiff's Motion will be granted with respect to the claim for a breach of contract. Plaintiff's other claims, however, are without merit.

First, unjust enrichment is an equitable doctrine. *See Goady v. Philadelphia Elec. Co.*, 639 F.2d 117, 122 (3d Cir. 1981) ("[I]f an adequate remedy at law exists, equitable relief will not be granted.")

Second, a breach of the covenant of good faith and fair dealing does not apply to express contract terms. *See Cargill Global Trading v. Applied Development Co.*, 706 F.Supp.2d 563, 580

(D.N.J. 2010) (quoting *Fields v. Thompson Printing Co.*, 363 F.3d 259, 271-72 (3d Cir. 2004) ("[W]here the terms of the parties' contract are clear, the implied covenant of good faith and fair dealing will not override the contract's express language.").

Third, with respect to the tortious interference claim, "an entity cannot interfere with its own contract ..." *In re Inter'l Ben. Grp., Inc.*, 2007 WL 1875926, *4 (D.N.J. 2007).

Finally, a declaratory judgment is moot in light of Plaintiff's success on the breach of contract claim.

Defendant's counterclaims, on the other hand, have no merit. Because this Court finds that Defendant improperly terminated Defendant's Lease, Defendant's Motion will be denied in full.

**IV.**

For the foregoing reasons, Plaintiff's Motion will be denied on the claims for unjust enrichment, breach of the covenant of good faith and fair dealing, tortious interference, and a declaratory judgment. In all other respects, Plaintiff's Motion will be granted. Defendant's Cross Motion will be denied in full.

Dated: 8/21/12

                                          /s/ Joseph E. Irenas  

                                      **JOSEPH E. IRENAS, S.U.S.D.J.**