UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| 2000 CLEMENTS BRIDGE, LLC, <br><br> Plaintiff, <br><br> v. <br><br> OFFICEMAX NORTH AMERICA, INC., <br><br> Defendant. | HONORABLE JOSEPH E. IRENAS <br><br> CIVIL ACTION NO. 11-0057 <br> (JEI/KMW) <br><br> **OPINION** |

**APPEARANCES:**

PATRAS WILLIAMS, LLC
Amy Marie Williams, Esquire
14 Countryside Lane, Suite 100
Ringwood, NJ 07456
     Counsel for Plaintiff

REILLY, JANICZEK & MCDEVITT PC
Susan Valinis, Esquire
2500 McClellan Boulevard, Suite 240
Merchantville, NJ 08109
     Counsel for Defendant

**IRENAS**, Senior District Judge:

This is a breach of contract case.  Plaintiff 2000 Clements Bridge, LLC ("Clements Bridge") brought suit against Defendant OfficeMax North America, Inc. ("OfficeMax"), claiming that OfficeMax had breached the terms of a commercial lease agreement between the parties.  Presently before the Court is Plaintiff's Motion for Summary Judgment Awarding Damages, Attorneys' Fees

and Legal Expenses (Dkt. No. 103).[1]  For the reasons given below, the Motion will be granted in part in favor of Clements Bridge. Summary judgment will also be granted in part in favor of OfficeMax.

## I.

There are no material facts in dispute.  As the Court has previously ruled on the issue of liability, see *2000 Clements Bridge, LLC v. Officemax North America, Inc.*, No. 11-0057, 2012 WL 3600285 (D.N.J. Aug. 21, 2012), the Court will recount only those facts relevant to the disposition of the instant Motion. Plaintiff 2000 Clements Bridge, LLC owns the Deptford Landing Shopping Center ("Shopping Center"), which consists of retail space.  Defendant OfficeMax North America, Inc., was a tenant of the Shopping Center.

On September 13, 2007, OfficeMax entered into a lease ("Lease") with the Shopping Center's previous owner, AIG Baker Deptford, LLC.  (SUMF[2] ¶ 1)  On July 16, 2010, Clements Bridge acquired title to the Shopping Center and took over the Lease. (SUMF ¶ 2)  The Lease contains three articles relevant to the

---

[1] This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a)(1).
[2] SUMF refers to OfficeMax's Statement of Material Undisputed Facts in Support of OfficeMax's Opposition to Plaintiff's Motion for Summary Judgment on Damages (Dkt. No. 107).

matter at hand.  Article 23, which sets forth the landlord's remedies, provides,

> If Tenant shall be in default of any monetary
> obligation under this lease . . . , or shall be in
> default under any other provision of this
> lease . . . , then Landlord may, by giving written
> notice to Tenant, at any time thereafter during the
> continuance of such default, either (a) terminate this
> lease or (b) re-enter the Demised Premises by summary
> proceedings or otherwise, expel Tenant and remove all
> property therefrom, relet the Demised Premises at the
> best possible rent readily obtainable (making
> reasonable efforts therefor) and receive the rent
> therefrom; provided, however, Tenant shall remain
> liable for the equivalent of the amount of all rent
> reserved herein less the avails of reletting, if any,
> after deducting therefrom the reasonable cost of
> obtaining possession of the Demised Premises and the
> reasonable cost of any repairs and alterations
> (excluding tenant improvements for any replacement
> tenant or tenants thereof) necessary to prepare it for
> reletting, or (c) exercise any other remedy permitted
> at law or equity other than acceleration of
> rents. . . . Except for the legal remedy of damages
> (provided Landlord shall in all instances be required
> to mitigate damages) as set forth herein and remedies
> of Landlord expressly set forth herein, Landlord's
> remedies shall be exclusive of other remedies.

(*Id.* at Ex. 1 ("Lease"), art. 23, at 27-28)  Article 35 of the Lease also specifies, "Unless otherwise provided, upon the termination of this lease under any of the Articles hereof, the parties hereto shall be relieved of any further liability hereunder as to acts, omissions or defaults occurring prior to such termination." (*Id.* art. 35, at 34)  Finally, Article 40 delineates the parties' responsibilities with respect to attorneys' fees:

3

> If either party hereto be made or becomes a party to
> any litigation commenced by or against the other party
> involving the enforcement of any of the rights and
> remedies of such party, or arising on account of the
> default of the other party in the performance of such
> party's obligations hereunder, then the prevailing
> party in any such litigation, or the party becoming
> involved in such litigation because of a claim against
> such other party, as the case may be, shall receive
> from the other party all costs and reasonable
> attorneys' fees incurred by such party in such
> litigation.

(*Id*. art. 40, at 35)

Beginning in October 2010, OfficeMax stopped making monthly rent payments to Clements Bridge, who sent default notices to OfficeMax on October 12, 2010, November 5, 2010, and December 7, 2010. (Williams Cert. ¶ 4, Exs. 2, 3, 4) In each notice, Clements Bridge reserved "the right to exercise any or all of those remedies as set forth in Article 23 of the Lease . . . , which may include, but shall not be limited to, the right to commence legal proceedings." (*Id*. at Exs. 2, 3, 4) In addition, the November 5 letter stated that Clements Bridge had the right "to exercise any and all of the remedies set forth in Article 23 of the Lease or elsewhere, which may include, but shall not be limited to, the right to commence legal proceedings against [OfficeMax] to obtain all appropriate legal and equitable remedies." (*Id*. at Ex. 3)

On November 23, 2010, Clements Bridge filed the Complaint in New Jersey State Court, alleging breach of contract, unjust

4

enrichment, breach of the covenant of good faith and fair
dealing, and tortious interference.  Clements Bridge also sought
a declaratory judgment.  (Notice of Removal Ex. A, Dkt. No. 1)
On December 7, 2010, OfficeMax sent Clements Bridge a written
notice that it was terminating the Lease as of February 28,
2011.  (SUMF ¶ 3)  OfficeMax removed the action to this Court on
January 6, 2011 (Dkt. No. 1) and filed an Answer and Crossclaims
on January 20, 2011.  (Dkt. No. 7)  On January 22, 2011,
OfficeMax closed its store.  Clements Bridge sent a letter to
OfficeMax on February 25, 2011 stating that it was exercising
"the remedy specifically set forth in Section 23(b)," which
allows Clements Bridge to re-enter the property.  (Valinis Cert.
Ex. A)  Clements Bridge took possession of the store on February
28, 2011.  (SUMF ¶¶ 6-7)

Between April and December 2011, Clements Bridge negotiated
a retail lease with DSW Shoe Warehouse, Inc. ("DSW") to replace
the Lease it had with OfficeMax.  (Williams Cert. ¶ 9)  On
December 19, 2011, Clements Bridge sent OfficeMax a letter
indicating that it was terminating the Lease.  (SUMF ¶ 20)
Clements Bridge entered into a lease with DSW ("DSW Lease") that
same day.  DSW took possession of the store on January 13, 2012,
and began paying rent on April 10, 2012.  (Williams Cert. Ex. 1
("Damages Stipulation"), ¶ 5)

5

On August 21, 2012, this Court found that OfficeMax had breached the Lease and granted summary judgment to Clements Bridge on that claim.  (Dkt. Nos. 84-85)  The Court denied summary judgment on Clements Bridge's remaining claims and on all of OfficeMax's crossclaims.  (*Id.*)

On November 21, 2012, Clements Bridge and OfficeMax entered into a Stipulation of Facts Regarding Damages ("Damages Stipulation").  (Damages Stipulation ¶ 4)  The parties agreed to the amounts of all categories of damages that Clements Bridge seeks but disagreed on the categories of damages to which Clements Bridge is entitled.  The five undisputed categories of damages are as follows:

1) Fixed Rent for the period from December 1, 2010 through December 19, 2011 ("Undisputed Fixed Rent Damages") in the amount of $419,600.41, subject to prejudgment interest at a rate of 6%;

2) Common area maintenance costs ("CAM") for the period from January 1, 2009 through December 19, 2011 ("Undisputed CAM Damages") in the amount of $107,980.51, subject to prejudgment interest at a rate of 6%;

3) Taxes for the period from January 1, 2010 through December 19, 2011 ("Undisputed Tax Damages") in the amount of $132,914.56, subject to prejudgment interest at a rate of 6%;

4) Premises utility charge amounts for the period of March 1, 2011 through December 19, 2011 ("Undisputed Carrying Cost Damages") in the amount of $9,553.79, subject to prejudgment interest at a rate of 6%; and

5) Costs and expense that Clements Bridge paid to third parties to repair damage to the Premises after

OfficeMax vacated it ("Undisputed Repair Damages") in the amount of $1,006.80, subject to prejudgment interest at a rate of 6%.

(*Id.* ¶¶ 9, 11, 13, 15, 17)

In addition, there are six categories of damages on which the parties disagree. For three of the categories – Fixed Rent, CAM, and Taxes – the disputed amounts concern the period of time after Clements Bridge entered into the DSW Lease. The disputed damages are as follows:

1) Fixed Rent for the period from December 20, 2011 through January 31, 2018 ("Disputed Fixed Rent Damages") in the amount of $622,700.33, with future Disputed Fixed Rent Damages to be discounted to present value at 6%;

2) CAM amounts for the period from December 20, 2011 through April 9, 2012 ("Disputed CAM Damages") in the amount of $10,109.56;

3) Taxes for the period of December 20, 2011 through April 9, 2012 ("Disputed Taxes Damages") in the amount of $27,560.93;

4) Premises utility charges for the period from December 20, 2011 through January 12, 2012 ("Disputed Carrying Cost Damages"), the date on which DSW took possession of the Premises, in the amount of $876.26;

5) Commissions that Clements Bridge paid to third party brokers in connection with the DSW Lease ("Commission Damages") in the amount of $127,088.90; and

6) A construction allowance that Clements Bridge paid to DSW pursuant to the DSW Lease ("Construction Allowance Damages") in the amount of $600,420.00.

(*Id.* ¶¶ 10, 12, 14, 16, 18-19)

Clements Bridge now moves for summary judgment on damages, attorneys' fees, and legal expenses.  (Dkt. No. 103)

## II.

Summary judgment is proper if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  In deciding a motion for summary judgment, the Court must construe the facts and inferences in a light most favorable to the non-moving party.  *Pollock v. Am. Tel. & Tel. Long Lines*, 794 F.2d 860, 864 (3d Cir. 1986).

"'With respect to an issue on which the non-moving party bears the burden of proof, the burden on the moving party may be discharged by 'showing' – that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case.'"  *Conoshenti v. Public Serv. Elec. & Gas*, 364 F.3d 135, 145-46 (3d Cir. 2004) (quoting *Celotex*, 477 U.S. at 323).  The role of the Court is not "to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).  "Only disputes over facts that might affect the outcome of the suit under the

governing law will properly preclude the entry of summary judgment." *Id.* at 249.

Where the meaning of contract language is at issue, a party is entitled to summary judgment "only if the contract language is unambiguous," such that it "is subject to only one reasonable interpretation." *Arnold M. Diamond, Inc. v. Gulf Coast Trailing Co.*, 180 F.3d 518, 522 (3d Cir. 1999). While "the threshold inquiry as to whether contract terms are ambiguous is a legal question," the interpretation of an ambiguous contract term is left to the factfinder. *Teamsters Indus. Employees Welfare Fund v. Rolls-Royce Motor Cars, Inc.*, 989 F.2d 132, 135 n.2 (3d Cir. 1993).

### III.

#### A.

The threshold dispute question before the Court is which remedy Clements Bridge elected under Article 23. OfficeMax argues that Clements Bridge ultimately chose to terminate the Lease pursuant to Article 23(a) and is therefore barred from recovering damages for the period from December 20, 2011, onwards under Article 35. The Court disagrees.

First, the Court finds that the remedies listed in Article 23 are not exclusive. Article 23 states, "Landlord may . . . either (a) terminate this lease or (b) re-enter the Demised

Premises . . . , or (c) exercise any other remedy permitted at law or equity . . . ." (Lease art. 23, at 27-28) Nothing in this language indicates that Clements Bridge could pursue only one of the listed remedies. Rather, Clements Bridge was entitled to exercise any and all remedies in Article 23, including termination, re-entry, and litigation.

Second, even if the Article 23 remedies were exclusive, the Court finds that Clements Bridge elected to re-enter, retake, and relet under Article 23(b). Thus, Clements Bridge's purported termination of the Lease pursuant to Article 23(a) on December 19, 2011 was invalid. As such, Article 35, which limits the parties' liability after the Lease is terminated, does not apply. (*Id*. art. 35, at 34) The Court now turns to the question of damages.

### B.

"Judicial remedies upon breach of contract fall into three general categories: restitution, compensatory damages and performance." *Donovan v. Bachstadt*, 453 A.2d 160, 165 (N.J. 1982). The purpose of compensatory damages is to put the nonbreaching party in the position it would have been in absent the breach. *Totaro, Duffy, Cannova & Company, L.L.C.*, 921 A.2d 1100, 1107-08 (N.J. 2007). "What that position is depends upon what the parties reasonably expected." *Donovan*, 453 A.2d at

165.   Thus, a defendant is liable only for losses that were
foreseeable result of a breach when the contract was made.   *Id.*

In this case, the parties' expectations are clear:
Clements Bridge expected that OfficeMax would pay it a certain
amount of Fixed Rent until the Lease expired on January 31,
2018.   The parties also expected that for the duration of the
Lease, OfficeMax would cover common area maintenance ("CAM")
costs, real estate taxes, and utility charges.   Therefore,
Clements Bridge is entitled to the following damages:

1)   Disputed Fixed Rent Damages in the amount of
     $622,700.33,[3] which is the difference between the
     amount of rent Clements Bridge now receives from DSW
     and the amount of rent it would have received from
     OfficeMax for the duration of the Lease;

2)   $10,109.56 in Disputed CAM Damages for the period from
     December 20, 2011, through April 9, 2012, the date on
     which DSW began paying rent;

3)   $27,560.93 in Disputed Taxes Damages for the period of
     December 20, 2011, through April 9, 2012; and

4)   Disputed Carrying Cost Damages in the amount of
     $876.26, which is the amount that Clements Bridge paid
     in utility charges from December 20, 2011, the date on
     which Clements Bridge entered into the Lease with DSW,
     through January 12, 2012, the date on which DSW
     accepted possession of the Premises.

(Damages Stipulation ¶¶ 10, 12, 14, 16)

Clements Bridge also asserts that it can recover brokers'
commissions that it paid in connection with the DSW Lease under

---

[3] Per the parties' Damages Stipulation, any future Disputed Fixed Rent Damages
will be discounted to present value at 6%.

a compensatory damages theory.  The Court agrees.  The purpose
of compensatory damages is to put the plaintiff in the position
it would have been in but for the defendant's breach.  *Totaro*,
921 A.2d at 1107-08.  Here, Clements Bridge would not have had
to pay these fees absent OfficeMax's breach.  Further, the
commission was a foreseeable consequence of the breach,
particularly given the Lease's express requirement that Clements
Bridge mitigate its damages in order to pursue remedies at law
or equity.  (Lease art. 23(c), at 28)

However, the Court does not agree that Clements Bridge is
entitled to the full amount of the Commission Damages.  The
Lease was to expire on January 31, 2018.  By contrast, the DSW
Lease will expire on January 31, 2022.[4]  The commission that
Clements Bridge paid covers the full term of the DSW Lease,
which lasts four years beyond when the OfficeMax Lease would
have expired.  Allowing Clements Bridge to recover Commission
Damages for the years beyond the expiration of the OfficeMax
Lease would result in a windfall for Clements Bridge.
Therefore, the Court will reduce the Commission Damages by 40%
from $127,088.90 to $76,253.34.  This reduction is proportional
to the number of years that the DSW Lease lasts beyond the
expiration of the OfficeMax Lease.

---

[4] For the purposes of the damages calculation, the Court assumes that DSW will
not exercise its option to extend the DSW Lease to either fifteen or twenty
years.

12

Finally, Clements Bridge seeks damages for $600,420.00 in Construction Allowance damages for money it paid to DSW under the terms of the DSW Lease. Clements Bridge contends that these costs were a foreseeable consequence of OfficeMax's breach and thus recoverable under a compensatory damages theory. OfficeMax argues that Article 23(b) bars recovery for these costs because it provides that OfficeMax is responsible for "the reasonable cost of any repairs and alterations (excluding tenant improvements for any replacement tenant[)]." (*Id.* art. 23(b), at 28)

In this case, the Lease bars Clements Bridge from recovering these costs as compensatory damages. "Under [New Jersey] law, when the terms of a contract are clear and unambiguous, there is no room for construction and the court must enforce those terms as written." *Watson v. City of E. Orange*, 815 A.2d 956, 959 (N.J. 2003). Article 23(b) explicitly excludes tenant improvements for the replacement tenant as a category of damages for which Clements Bridge may recover. Accordingly, the Court finds that Clements Bridge is not entitled to Construction Allowance Damages.

In sum, summary judgment will be granted in favor of Clements Bridge with regard to the Disputed Fixed Rent Damages, Disputed CAM Damages, Disputed Taxes Damages, Disputed Carrying Cost Damages, and Commission Damages in part. Summary judgment

will be granted in favor of OfficeMax with respect to the Construction Allowance Damages. Clements Bridge will be awarded damages in the following amounts:

| Undisputed Damages[5] | $671,056.07[6] |
|---|---|
| Disputed Fixed Rent Damages | $622,700.33[7] |
| Disputed CAM Damages | $10,109.56 |
| Disputed Taxes Damages | $27,560.93 |
| Disputed Carrying Cost Damages | $876.26 |
| Commission Damages | $76,253.34 |
| Total | $1,408,556.49 |

## IV.

Clements Bridge also seeks attorneys' fees and costs and divides those fees into three categories: litigation attorneys' fees pursuant to Article 40, pre-litigation fees in connection with OfficeMax's default, and mitigation of damages fees in connection with the negotiation of the DSW Lease. (Williams Cert. ¶ 14) OfficeMax opposes these fees for two reasons. First, OfficeMax argues that Article 40 does not permit Clements Bridge to recover attorneys' fees for pre-litigation and lease-

---

[5] *See supra* pp. 6-7 for a breakdown of the Undisputed Damages; *see also* Damages Stipulation ¶¶ 9, 11, 13, 15, 17.

[6] This amount is subject to the assessment of prejudgment interest at a rate of 6%, per the Damages Stipulation. (Damages Stipulation ¶¶ 9, 11, 13, 15, 17)

[7] As agreed in the Damages Stipulation, this amount will be discounted to present value at 6%. (*Id.* ¶ 10)

negotiation work.  Second, OfficeMax contends that the fees
sought are unreasonable.  The Court addresses these arguments in
turn.

### A.

In recognition of New Jersey's strong public policy against
shifting attorneys' fees and costs, the New Jersey Supreme Court
has adopted "the 'American Rule,' which prohibits recover of
counsel fees by the prevailing party against the losing party."
*In re Niles*, 823 A.2d 1, 7 (N.J. 2003) (citing *In re Estate of
Lash*, 766 A.2d 765, 771 (N.J. 2001)).  "However, 'a prevailing
party can recover those fees if they are expressly provided for
by statute, court rule, or contract.'"  *Litton Indus., Inc. v.
IMO Indus., Inc.*, 982 A.2d 420, 427 (N.J. 2009) (quoting
*Packard-Bamberger & Co., Inc. v. Collier*, 771 A.2d 1194, 1202
(N.J. 2001)).  "[E]ven where attorney-fee shifting is controlled
by contractual provisions, courts will strictly construe that
provision in light of the general policy disfavoring the award
of attorneys' fees."  *N. Bergen Rex Transp., Inc. v. Trailer
Leasing Co.*, 730 A.2d 843, 848 (N.J. 1999) (citing *McGuire v.
City of Jersey City*, 593 A.2d 309, 417 (N.J. 1999)).

There is no dispute in this case that the parties
contracted for shifting attorneys' fees and costs to the
prevailing party.  OfficeMax instead challenges Clements

15

Bridge's request for attorneys' fees and costs outside of this litigation.  The Court agrees that Clements Bridge may not recover for this work.

Article 40 of the Lease provides,

> If either party hereto be made or becomes a party to any litigation commenced by or against the other party involving the enforcement of any of the rights and remedies of such party, or arising on account of the default of the other party in the performance of such party's obligations hereunder, then the prevailing party in any such litigation . . . shall receive from the other party all costs and reasonable attorneys' fees incurred by such party in such litigation.

(Lease art. 40, at 35)  This provision plainly limits attorneys' fees and costs to those sustained as part of any litigation around the Lease.  Fees and costs for attorney work performed in connection with the pre-litigation default notices and negotiation of the DSW Lease are therefore outside the scope of Article 40, especially in light of New Jersey's directive to construe the language strictly.

Clements Bridge argues that it should be awarded these fees and costs as compensatory damages on the theory that but for OfficeMax's breach, there would have been no need for Clements Bridge to send default notices or negotiate a new lease.  While that may be true as a matter of fact, the argument fails as a basis for awarding attorneys' fees.  As noted above, New Jersey has a strong public policy against shifting attorneys' fees and

16

costs. Allowing Clements Bridge to recover fees and costs for work relating to OfficeMax's default and the DSW Lease would controvert that policy, especially because the parties expressly contracted around the presumption against fee-shifting and limited fee-shifting to fees incurred in litigation. Accordingly, Clements Bridge may not recover attorneys' fees and costs for any work related to OfficeMax's default prior to the commencement of litigation or the negotiation of the DSW Lease.

### B.

OfficeMax next argues that the fees incurred in litigation are unreasonable. "In determining the reasonableness of an attorneys' fee award, the threshold issue 'is whether the party seeking the fee prevailed in the litigation.'" *Litton*, 982 A.2d at 428 (quoting *N. Bergen*, 730 A.2d at 848). After making that determination, the Court must use the lodestar method, which involves multiplying the total number of hours reasonably expended by a reasonable hourly rate, to decide what constitutes a reasonable fee. *Rendine v. Pantzer*, 661 A.2d 1202, 1226 (N.J. 1995); *see also Hensley v. Eckerhart*, 461 U.S. 424, 433-37 (1983). The Court must consider the following factors in determining the reasonableness of the fee:

> (1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;

17

(2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;

(3) the fee customarily charged in the locality for similar legal services;

(4) the amount involved and the results obtained;

(5) the time limitations imposed by the client or by the circumstances;

(6) the nature and length of the professional relationship with the client;

(7) the experience, reputation, and ability of the lawyer or lawyers performing the services;

(8) whether the fee is fixed or contingent.

*Furst v. Einstein Moomjy, Inc.*, 860 A.2d 435, 447 (N.J. 2004) (citing RPC 1.5(a)).

"The computation of the lodestar mandates that the trial court determine the reasonableness of the hourly rate of the prevailing attorney in comparison to rates for similar services by lawyers of reasonably comparable skill, experience, and reputation in the community." *Litton*, 982 A.2d at 429 (internal quotation marks and citations omitted). The Court must also determine whether the time expended to achieve the result is "equivalent to the time 'competent counsel would have expended to achieve a comparable result.'" *Furst*, 860 A.2d at 447 (quoting *Rendine*, 661 A.2d at 1227). The Court should exclude hours that are not reasonably expended, including those that are

18

excessive, redundant, or otherwise unnecessary. *Rendine*, 661
A.2d at 1226. Finally, the Court must consider the degree of
success when deciding whether the time expended is reasonable.
*Litton*, 982 A.2d at 429. The Court may reduce an award only "in
response to specific objections made by the opposing party."
*Interfaith Cmty. Org. v. Honeywell Int'l, Inc.*, 426 F.3d 694,
711 (3d Cir. 2005).


### 1.  Reasonable Rate

Clements Bridge seeks an hourly rate of $405.00 per hour
for legal services performed by partners in connection with
litigation and an hourly rate of $150.00 per hour for work
performed by paralegals in connection with litigation.
(Williams Cert. ¶ 19) The party seeking fees bears the burden
"of producing sufficient evidence of what constitutes a
reasonable market rate for the essential character and
complexity of the legal services rendered in order to make out a
prima facie case." *Smith v. Phila. Hous. Auth.*, 107 F3d 223,
225 (3d Cir. 1997). "This burden is normally addressed by
affidavits prepared by other attorneys in the relevant legal
community." *Access 4 All, Inc. v. Boardwalk Regency Corp.*, No.
08-3817, 2012 WL 3627775, at *4 (D.N.J. June 28, 2012).

To support the reasonableness of its requested rate,
Clements Bridge submits a certification from lead counsel, Amy

Williams, regarding the nature of the work performed (Williams
Cert.); a profile of the firm, Patras Williams, LLC, and its
partners, Ms. Williams and Anna Patras (*id.* Ex. 9); and
certifications from four partners from four different law firms
who practice in the District of New Jersey stating that the
requested rates are commensurate with the prevailing rates in
this legal community (Bundy Cert.; Kaller Cert.; Vales Cert.;
Argiropoulous Cert.).  Clements Bridge has met its burden with
these submissions.  As OfficeMax has not opposed the
reasonableness of the hourly rates, the Court finds the proposed
rates to be reasonable.


### 2.  Reasonable Hours

OfficeMax raises several objections to Clements Bridge's
request for fees.  The Court addresses them in turn.


### *a.*

First, OfficeMax argues that the award should be reduced to
reflect the fact that Clements Bridge succeeded on only one of
its claims.  (Valinis Cert. ¶ 31(a))  The Court disagrees.
Although the Court granted summary judgment in favor of Clements
Bridge on only its breach of contract claim, the remaining
claims for unjust enrichment, breach of the covenant of good
faith and fair dealing, tortious interference, and a declaratory

judgment were clearly pled in the alternative.  Further, Clements Bridge's success on its breach of contract claim allowed it to recover almost all of the damages that it sought. *Cf. N. Bergen*, 730 A.2d at 850 (holding that the attorneys' fee award should be reduced where plaintiff recovered only fifty-eight percent of the damages it sought).  Accordingly, the Court will not reduce the award on this basis.

*b.*

OfficeMax next argues that Clements Bridge cannot recover for time that its counsel block billed because the time entries are too vague.  "A fee petition is required to be specific enough to allow the district court 'to determine if the hours claimed are unreasonable for the work performed.'" *Rode v. Dellarciprete*, 892 F.2d 1177, 1191 (3d Cir. 1990) (quoting *Pawlak v. Greenawalt*, 713 F.2d 972, 978 (3d Cir. 1983)).  Courts in this district have repeatedly held that block billing can meet this requirement.  *See, e.g.*, *Fed. Trade Comm'n v. Circa Direct LLC*, No. 11-2712, 2012 WL 6568417, at *9 (D.N.J. Dec. 17, 2012) (not yet published); *Ill. Nat. Ins. Co. v. Wyndham Worldwide Operations, Inc.*, No. 09-1724, 2011 WL 2293334, at *4 (D.N.J. June 7, 2011); *United States v. NCH Corp.*, Nos. 98-5268, 05-0881, 2010 WL 3703756, at *4 (D.N.J. Sept. 10, 2010).  In

this case, the entries are specific enough for the Court to determine whether the time expended was reasonable.

*c.*

OfficeMax also claims that Patras Williams spent excessive amounts of time drafting and reviewing pleadings.  OfficeMax argues that it was unreasonable for counsel to bill 10.2 hours on its Complaint, 5.1 hours reviewing OfficeMax's Answer and Counterclaims, and 35.3 hours on its moving papers for its motion for summary judgment on liability.  (Valinis Cert. ¶ 31(c))  OfficeMax also objects to 18.2 hours of time that counsel spent preparing and responding to discovery requests.[8]

First, 10.2 hours is a reasonable amount of time to spend drafting a 17-page Complaint comprising 97 paragraphs and several claims.  Second, 5.1 hours spent reviewing and analyzing OfficeMax's Answer and Counterclaims appears reasonable in light of the length of Clements Bridge's Complaint and the counterclaims that OfficeMax asserted.  Third, the Court cannot say that it was unreasonable for counsel to spend 35.3 hours preparing Clements Bridge's moving papers for its motion for summary judgment on liability given that Clements Bridge submitted a 34-page brief, a 17-page Rule 56.1 statement, and a

---

[8] OfficeMax has not explained why any of these hours are excessive, nor has it offered suggested reductions.

120-page certification in support of its motion.  Fourth, 18.2 hours spent on preparing and responding to discovery requests seems reasonable, as those hours cover "the exchange of initial disclosures, the production of more than 3,000 pages of documents between the parties, preparation of requests for admissions and documents, as well as interrogatories propounded by [Clements Bridge], and responses to requests for documents and interrogatories propounded by [OfficeMax]." (Williams Reply Cert. ¶ 15)  Therefore, the Court will not reduce these hours.

*d.*

OfficeMax also asks the Court to exclude 8.2 hours that Ms. Williams billed because they are administrative tasks that could have been completed by a paralegal.  (Valinis Cert. ¶ 31(d)) Specifically, OfficeMax seeks to exclude the following entries:

(1)  November 22, 2010 — "Prepare Summons and Case Information Statement re: OMX Complaint; draft filing letter; facilitate filing of OMX Complaint w/ court; t/c w/ REDACTED" – 1.3 hours
(2)  December 7, 2010 — "Coordinate service of OMX Complaint on OMX registered agent; finalize and coordinate delivery of OMX December rent default notice; electronic correspondence w/ C. Lents re: same; review and analysis of OMX lease termination letter" – 0.8 hours
(3)  December 29, 2010 — "Electronic correspondence w/ REDACTED; finalize file and serve track assignment motion" – 1.1 hours
(4)  May 4, 2011 — "T/c w/ REDACTED; finalize and serve discovery requests on OMX counsel; preliminary review and analysis of OMX discovery

23

requests; electronic correspondence w/ REDACTED; t/c w/ REDACTED" – 1.3 hours
(5)  June 5, 2011 — "Finalize initial draft of written discovery responses; t/c w/ REDACTED; prepare service copies and serve same on OMX counsel" – 3.7 hours

(Valinis Cert. ¶ 31(d))

In reply, Ms. Williams certifies that Patras Williams did not employ any paralegals or administrative staff with litigation experience during the period covered by three of the challenged entries (November 22, 2010, December 7, 2010, and December 29, 2010). (Williams Reply Cert. ¶ 10) Be that as it may, the Court agrees with OfficeMax that administrative tasks should not be billed at partner rates. *See Tenafly Eruv Ass'n, Inc. v. Borough of Tenafly*, 195 F. App'x 93, 101 (3d Cir. 2006) (reducing an award where an attorney performed administrative tasks). The Court will therefore reduce Ms. Williams's billing rate by approximately fifty percent to $200.00 per hour for 5.2 of these hours. As the Court agrees with Ms. Williams that some of the challenged hours are not administrative, the Court will exclude 3.0 hours from the lower rate.

*e.*

OfficeMax argues that several fees and costs should be excluded as pre-litigation expenses, which would be barred under Article 40. (Valinis Cert. ¶ 31(e)) However, all of the

24

disputed fees and costs were incurred after litigation in this matter had already begun.  Thus, there is no basis for excluding these hours.

*f.*

OfficeMax's next argument is that certain fees and costs for a reassignment of track designation in New Jersey Superior Court should be excluded because it was the result of counsel's error.  (Valinis Cert. ¶ 31(f))  In reply, Ms. Williams argues that Clements Bridge sought a reassignment of track designation because subsequent to Clements Bridge filing the Complaint, OfficeMax defaulted on its December rent and indicated that it was both terminating the Lease and planning to close the store immediately.  (Williams Reply Cert. ¶¶ 21-26, Ex. A)  Given these actions, Clements Bridge sought to accelerate discovery to facilitate the "prompt resolution" of the case.  (*Id.* Ex. A ¶¶ 14-15)  As OfficeMax has not provided any evidence suggesting that the motion to change the track designation was submitted to correct counsel's error rather than being submitted in response to the changing factual circumstances, the Court will not exclude these hours.

*g.*

OfficeMax also seeks to exclude time spent on Clements Bridge's Motion to Strike OfficeMax's amended counterclaims, as the Motion was denied.  (Valinis Cert. ¶ 31(g))  But as Clements Bridge points out, this Court ultimately found that OfficeMax's counterclaims were without merit.  Further, the fact that a prevailing party lost a nondispositive motion does not mean that it is not is not entitled to fees for that motion.  Therefore, the Court will not exclude these hours.

*h.*

OfficeMax next argues that 52.2 hours should be excluded or reduced because Ms. Williams and her partner, Ms. Patras, conducted excessive research for those tasks based on their claimed level of expertise.  (Valinis Cert. ¶ 31(h))  The Court cannot say that it was unreasonable for Ms. Williams and Ms. Patras to spend 52.2 hours on research over the course of over a year of litigation during which time the parties engaged in extensive discovery and filed dispositive motions.

*i.*

Finally, OfficeMax contends that the request should be denied "for charges related to unnecessary overnight mail and overhead costs (*i.e.*, bates labeling and duplication costs)."

26

(*Id.* ¶ 31(i))   Once again, OfficeMax provides no explanation for why these costs were unnecessary.   The Court is satisfied with Ms. Williams's explanations for these costs (Williams Reply Cert. ¶¶ 40-47, Ex. B) and deems these costs reasonable. Accordingly, they will not be reduced.

### 3.   Lodestar

For the reasons discussed above, the Court finds that the lodestar calculation is as follows:

| Legal Professional | Reasonable Hourly Rate | Reasonable Hours Expended | Total Fee |
|---|---|---|---|
| Amy Williams, Esquire | $405 | 468.3 | $189,661.50 |
| Amy Williams – Administrative | $200 | 5.2 | $1,040.00 |
| Anna Patras, Esquire | $405 | 8.2 | $3,321.00 |
| Paralegal | $150 | 36.8 | $5,520.00 |

These fees total $199,542.50.   Clements Bridge is also entitled to recover costs of $5,323.00.   Thus, the total award for attorneys' fees and costs is $204,865.50.

### V.

For the reasons stated above, Plaintiff Clements Bridge's Motion for Summary Judgment Awarding Damages, Attorneys' Fees and Legal Expenses is granted in part.   Summary judgment is granted in favor of OfficeMax with respect to the Commission Damages in part, Construction Allowance Damages, pre-litigation

27

attorneys' fees, and lease-negotiation attorneys' fees.  Summary judgment is granted in favor of Clements Bridge in all other respects.  Clements Bridge is awarded a total of $1,613,421.99, with $671,056.07 subject to the assessment of prejudgment interest at a rate of 6%, and $622,700.33 subject to discount to present value at a rate of 6%.  The Court will issue an appropriate Order.


Date:  July 23, 2013

                                    /s/ Joseph E. Irenas _____

                                   **Joseph E. Irenas, S.U.S.D.J.**

28